## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CARLOS EUGENE WIGGINS,**

**Petitioner,**

**v.**                                        **Case No. 8:21-cv-608-TPB-JSS**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

**Respondent.**

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Carlos Eugene Wiggins, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition, Respondent's response in opposition (Doc. 7), and Wiggins's reply (Doc. 12), the Court **DENIES** the petition.

## Background

This action arises from a robbery that took place in a Walmart parking lot in Polk County, Florida. Around 11:30 p.m. on June 1, 2017, the victim finished her shift at Walmart, bought some groceries, and entered her car. (Doc. 8-2, Ex. 3, at 166-67, 169.) As she sat in the driver's seat with the door ajar, a man put his arm on the steering wheel and said "he was there to rob [her]." (*Id.* at 171-72.) The man pulled her out of the car, placed her on the ground, and took her wallet and groceries. (*Id.* at 173-76.) Inside the wallet

1

were, among other items, a BB&T credit card and a Walmart "payroll card." (*Id.* at 176.) After taking the items, the man fled in a "dark red" sedan. (*Id.* at 176, 185.)

Approximately one hour after the robbery, the victim's payroll card was used at a nearby RaceTrac gas station to purchase $62.46 worth of items. (*Id.* at 212-14, 217.) About ninety minutes after this transaction, the victim's BB&T card was used at a Sunoco gas station to buy $85.50 worth of Newport cigarettes and Corona beer. (*Id.* at 207-08.)

Later that day, law enforcement located a "maroon Buick" sedan that resembled the vehicle seen leaving the scene of the robbery. (*Id.* at 255-56.) The car was parked outside a residence in Lakeland, Florida. (*Id.*) At some point, a man walked outside the house and approached the police. (*Id.* at 257.) Law enforcement showed him surveillance photographs from the RaceTrac and Sunoco gas stations, and he confirmed that the man in the pictures drove the "maroon Buick" and was inside the house. (*Id.* at 269-70.) A search of the residence uncovered a gray shopping bag with "numerous boxes of Newport cigarettes." (*Id.* at 335-36.) Law enforcement also found the victim's wallet, payroll card, and BB&T credit card in a garbage can outside the house. (*Id.* at 338-39.)

One of the occupants of the house was Wiggins, who was wearing the "same clothing" as the suspect in the surveillance photographs. (*Id.* at 272-

2

73.) After his arrest, Wiggins agreed to speak with law enforcement. (*Id.* at 331.) He admitted to having used the victim's cards at the RaceTrac and Sunoco gas stations. (*Id.* at 332.) But he "denied being involved in the robbery," claiming that an unknown "black male subject" had "provided him the cards." (*Id.* at 333, 348.)

Wiggins was subsequently charged with burglary with assault or battery, robbery, unlawful possession of a stolen credit card, two counts of fraudulent use of a credit card, and criminal use of personal identification information ("PII"). (*Id.*, Ex. 2, at 25-26.) Following a jury trial, Wiggins was acquitted of burglary and robbery but convicted of the remaining counts. (*Id.* at 122-23.) Before sentencing, Wiggins's counsel argued that double jeopardy required dismissal of the convictions for unlawful possession of a stolen credit card and fraudulent use of a credit card. (*Id.* at 161.) Counsel maintained that "the only [c]ount for which [Wiggins] [could] be sentenced [was]" criminal use of PII, which "subsume[d] the other three counts based on language in the statutes as well as the facts of the case." (*Id.*) The court granted the motion in part. It dismissed the convictions for fraudulent use of a credit card but declined to dismiss the conviction for unlawful possession of a stolen credit card. (*Id.* at 179-80.) Wiggins was sentenced to concurrent terms of ten years' imprisonment for criminal use of PII and five years' imprisonment for unlawful possession of a stolen credit card. (*Id.* at 180.)

Wiggins appealed, and the state appellate court *per curiam* affirmed the convictions. (*Id.*, Ex. 7.) Wiggins later moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 12, at 8-21.) The state postconviction court summarily rejected his claims, and the state appellate court affirmed without opinion. (*Id.* at 23-24; *id.*, Ex. 15.) Wiggins also filed a petition alleging ineffective assistance of appellate counsel, which was denied. (*Id.*, Exs. 10, 11.) This federal habeas petition followed. (Doc. 1.)

## **Standards of Review**

**AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Wiggins's convictions, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

**Ineffective Assistance of Counsel**

Wiggins alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

Wiggins must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not

6

warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Wiggins must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential.") (internal quotation marks and citation omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

**Exhaustion of State Remedies; Procedural Default**

A federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (stating that unexhausted claims that "would be procedurally barred in state court due to a state-law procedural default" provide no basis for federal habeas relief).

A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by

8

showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## Discussion

### Ground One

Wiggins contends that trial counsel inadequately presented the double-jeopardy argument that led to the dismissal of the convictions for fraudulent use of a credit card. (Doc. 2 at 7-9.) As noted above, counsel argued that "the only [c]ount for which [Wiggins] [could] be sentenced [was]" criminal use of PII, which "subsume[d]" the convictions for fraudulent use of a credit card. (Doc. 8-2, Ex. 2, at 161.) The court ultimately dismissed the fraudulent-use-of-a-credit-card convictions but upheld the conviction for criminal use of PII. (*Id.* at 179-80.)

Wiggins maintains that, in presenting this double-jeopardy argument, counsel "incorrectly stated the law applicable to [his] case." (Doc. 2 at 8.) According to Wiggins, criminal use of PII does not "subsume[]" fraudulent use of a credit card. (*Id.*) In fact, Wiggins argues, the opposite is the case: fraudulent use of a credit card subsumes criminal use of PII. (*Id.*) That is

9

because, according to Wiggins, the latter is a lesser included offense of the former. (*Id.*) Wiggins contends that, had counsel properly presented the double-jeopardy argument, the court would have dismissed the conviction for criminal use of PII and upheld the convictions for fraudulent use of a credit card—"misdemeanors punishable by no more than 1 incarceration year." (*Id.* at 9.)

Wiggins acknowledges that he did not raise this ineffective-assistance claim in state court. (Doc. 1 at 4-5.) Because he cannot return to state court to present the claim in an untimely, successive postconviction motion, *see* Fla. R. Crim. P. 3.850(b), (h), it is procedurally defaulted, *see Smith*, 256 F.3d at 1138.

Wiggins seeks to excuse the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* held that a petitioner may establish cause for the default of a claim of ineffective assistance of trial counsel where (1) "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective," and (2) the defaulted claim is a "substantial one," meaning that "the claim has some merit." *Martinez*, 566 U.S. at 14, 17. A petitioner shows that his defaulted claim is "substantial" under *Martinez* by demonstrating that "reasonable jurists 'would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" *Clark v.*

*Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014)).

*Martinez* does not excuse the default of Ground One because the underlying ineffective-assistance claim is not "substantial." *Martinez*, 566 U.S. at 14. As explained above, the state trial court found that double jeopardy barred Wiggins from being sentenced for both fraudulent use of a credit card and criminal use of PII. (Doc. 8-2, Ex. 2, at 179-80.) "When separate convictions violate double jeopardy, the remedy is to vacate the conviction for the lesser offense and affirm the conviction for the greater one." *Estache v. State*, 346 So. 3d 1230, 1235 (Fla. 3d DCA 2022). "[I]n the double jeopardy context, the lesser crime is that which has each element subsumed by the second crime, and the greater crime is that which requires proof of an additional element not required by the lesser crime." *State v. Tuttle*, 177 So. 3d 1246, 1247 (Fla. 2015). In other words, a lesser crime is one that "a defendant cannot possibly avoid committing . . . when the [greater offense] is perpetrated." *State v. Weller*, 590 So. 2d 923, 925 (Fla. 1991); *see also Overway v. State*, 718 So. 2d 308, 310 (Fla. 5th DCA 1998) ("A necessarily lesser included offense is one in which the burden of proof of the major crime cannot be discharged, without proving the lesser crime as an essential link in the chain of evidence." (internal quotation marks omitted)). The court "look[s] exclusively to [the] statutory elements" of the two offenses, *Tuttle*, 177 So. 3d

at 1248, "without regard to the charging document or evidence at trial," *Pizzo v. State*, 945 So. 2d 1203, 1206 (Fla. 2006).

Contrary to Wiggins's assertion, criminal use of PII is not a lesser included offense of fraudulent use of a credit card. To prove criminal use of PII, the State must establish "the following elements: (1) willfully and fraudulently using or possessing with intent to fraudulently use; (2) another person's [PII]; . . . (3) without that person's authorization or prior consent." *State v. Roberts*, 143 So. 3d 936, 937 (Fla. 2d DCA 2014) (internal quotation marks omitted). PII means "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person." Fla. Stat. § 817.568(1)(f). By contrast, fraudulent use of a credit card occurs when, "with intent to defraud," a defendant (1) "uses, for the purpose of obtaining money, goods, services, or anything else of value, a credit card obtained or retained in violation of this part or a credit card which he or she knows is forged"; or (2) "obtains money, goods, services, or anything else of value by representing, without the consent of the cardholder, that he or she is the holder of a specified card or by representing that he or she is the holder of a card and such card has not in fact been issued." Fla. Stat. § 817.61. A defendant can obtain a credit card "in violation of this part" in several ways, including by misrepresenting his financial condition to the issuing bank. Fla. Stat. § 817.59.

Wiggins's argument fails because a defendant can commit fraudulent use of a credit card without also perpetrating criminal use of PII. For example, a defendant commits fraudulent use of a credit card if he (1) obtains a credit card by making a "false statement" to a bank about his "financial condition," and (2) uses that card to "obtain[] money, goods, services, or anything else of value." Fla. Stat. §§ 817.59, 817.61. But that conduct would not constitute criminal use of PII, because the defendant neither possessed nor used "another person's [PII]."[1] *Roberts*, 143 So. 3d at 937. As a result, a defendant can commit fraudulent use of a credit card but "avoid committing" criminal use of PII. *Weller*, 590 So. 2d at 925. Thus, contrary to Wiggins's assertion, the latter is not a lesser included offense of the former.

Trial counsel "cannot be deficient for failing to raise a meritless claim." *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008). Here, Wiggins faults counsel for failing to seek dismissal of his conviction for criminal use of PII on the ground that it is a lesser included offense of fraudulent use of a credit card. (Doc. 2 at 8.) Because that argument lacks merit, counsel was not deficient for failing to raise it. Therefore, Wiggins's ineffective-assistance

---

[1] Likewise, a defendant commits fraudulent use of a credit card if he purchases goods "by representing that he . . . is the holder of a card and such card has not in fact been issued." Fla. Stat. § 817.61. Such a defendant would not necessarily commit criminal use of PII, however, because he need not use or possess "another person's [PII]" in order to falsely claim that a credit card was issued to him. *Roberts*, 143 So. 3d at 937.

claim is not substantial under *Martinez*, and Ground One is barred from federal habeas review.

**Grounds Two and Three**

In Ground Two, Wiggins contends that trial counsel was ineffective for failing to move for a judgment of acquittal on the charge for possession of a stolen credit card. (Doc. 1 at 6.) In Ground Three, Wiggins faults trial counsel for failing to seek suppression of his confession on the ground that he "was not advised of his rights against self-incrimination" in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). (*Id.* at 7.)

In his reply, Wiggins states that he "respectfully concedes [C]laims Two and Three of his 28 U.S.C. § 2254 Petition." (Doc. 12 at 6.) Because it appears that Wiggins has withdrawn Grounds Two and Three from consideration, the Court need not address them here. *See Evans v. McNeil*, No. 3:07-cv-98-LAC-EMT, 2009 WL 3163214, at *17 (N.D. Fla. Sept. 30, 2009) ("In Petitioner's reply brief, he expressly withdraws Ground Three from consideration. Therefore, the court need not consider this claim."), *adopted by* 2009 WL 3710725 (N.D. Fla. Nov. 3, 2009).

Even if Wiggins had not waived these claims, he would not be entitled to relief because they fail on the merits. The state postconviction court rejected Ground Two, finding that "even if counsel had moved for a [judgment of acquittal]" as to "unlawful possession of [a] stolen credit card," the trial

court "would not have granted the relief [Wiggins] seeks." (Doc. 8-2, Ex. 12, at 23.) The court explained that "the State presented evidence that [Wiggins] possessed the victim's credit cards, that the cards were taken by [him] from the victim without her consent, and [he] had the intent to impede the recovery of the items." (*Id.*)

The rejection of this claim was reasonable. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) (internal quotation marks omitted). Here, the state court found that counsel was not deficient because a motion for judgment of acquittal would have been unsuccessful under Florida law. (Doc. 8-2, Ex. 12, at 23.) Thus, the state court "already has told us how the issues would have been resolved under Florida state law had [counsel] done what [Wiggins] argues he should have done." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005). This Court is bound to defer to that determination. *See Smith v. Sec'y, Dep't of Corr.*, No. 8:18-cv-0049-KKM-SPF, 2021 WL 1214948, at *12 (M.D. Fla. Mar. 31, 2021) ("[T]o the extent the state court concluded the motions for judgment of acquittal would have been denied, this Court is obliged to defer because that is a question of state law.").

15

The state postconviction court also rejected Ground Three on the basis that it was "refute[d]" by the record. (Doc. 8-2, Ex. 12, at 24.) Citing the trial transcript, the court noted that the officer who interviewed Wiggins "testified that she read *Miranda* to [him] prior to his confession." (*Id.*) The court's factual determination that Wiggins was read his *Miranda* rights is "presumed correct until rebutted by 'clear and convincing evidence.'" *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir. 2022) (quoting 28 U.S.C. § 2254(e)(1)). Wiggins offers no basis to overcome this presumption of correctness. Thus, the court reasonably applied *Strickland* in finding that counsel was not deficient for failing to move to suppress the confession.

Grounds Two and Three are denied.

## Conclusion

Accordingly, it is **ORDERED** that Wiggins's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Wiggins and to **CLOSE** this case.

It is further **ORDERED** that Wiggins is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. To obtain a certificate of appealability, Wiggins must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and

16

(2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Wiggins has not made the requisite showing. Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Wiggins must obtain permission from the circuit court to appeal *in forma pauperis*.

 **DONE and ORDERED** in Tampa, Florida, this 2nd day of January, 2024.

             _____

             **TOM BARBER**
             **UNITED STATES DISTRICT JUDGE**